### Norfolk

GREGORY LYNN SPENCE

v.

COMMONWEALTH OF VIRGINIA

No. 1714-89-1

Decided July 30, 1991

COUNSEL

A. Theresa Bliss, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—Gregory Lynn Spence was convicted of four counts of distribution of cocaine. Here, we hold that the trial court erred in refusing to grant Spence's motion to sever the four counts of his indictment and try each offense separately pursuant to Rule 3A:10(b).

Virginia State Trooper Oliver Johnson, while conducting an undercover narcotics investigation in Accomack County, Virginia, encountered the appellant, Gregory Lynn Spence, in an area known as Whitesville. Trooper Johnson concentrated his investigation in the vicinity of a pool hall, parking lot and public dumpster where individuals congregated. Between January and June of 1989, Trooper Johnson made regular purchases of controlled substances.

Trooper Johnson testified that he first purchased cocaine from the appellant on February 3 in the above described location. Trooper Johnson testified that in the late afternoon of February 3, he drove to the Whitesville area and was approached by the appellant, from whom he purchased cocaine. Johnson engaged Spence in conversation, inquiring as to the quality of the drugs. Johnson was told by Spence that the cocaine was of good quality and "if you're not satisfied, you come back and let me know" and "if you need anything else, I will be here." Johnson next encountered Spence on February 14. While driving in the Whitesville area, Johnson recognized Spence and made a second purchase. On

March 1, Johnson was again investigating the Whitesville area and stated that, at this time, he was not interested in encountering Spence as he had already made two purchases from Spence and others were selling drugs in that area. As Johnson approached the pool hall area, he spoke to at least two individuals who indicated they had no drugs. He then "saw Mr. Spence" and "got his attention" and was able to make a third drug purchase. On May 10, Johnson, again unable to make contact with other sellers, made his fourth purchase from Spence. Prior to trial, Spence moved to sever the four distribution counts.

■ The trial court may, in its discretion, try the defendant for more than one offense at the same time without his consent only if justice does not require separate trials and the offenses meet the requirements of Rule 3A:6(b). *See Godwin v. Commonwealth*, 6 Va. App. 118, 121, 367 S.E.2d 520, 521-22 (1988). The requirements of Rule 3A:6(b) provide for the joinder of offenses only where the offenses (1) "are based on the same act or transaction" or (2) "on two or more acts or transactions that are connected" or (3) "constitute parts of a common scheme or plan." The introduction of evidence of factually similar offenses, even those occurring within hours of one another, has been held to be error. *See, e.g., Boyd v. Commonwealth*, 213 Va. 52, 189 S.E.2d 359 (1972); *Johnson v. Commonwealth*, 3 Va. App. 444, 350 S.E.2d 673 (1986); *Henderson v. Commonwealth*, 5 Va. App. 125, 360 S.E.2d 876 (1987); *Godwin v. Commonwealth*, 6 Va. App. 118, 367 S.E.2d 520 (1988).

## I. The Same Transaction

In *Boyd v. Commonwealth*, 213 Va. 52, 189 S.E.2d 359 (1972), the Supreme Court reversed Boyd's conviction for possession and distribution of heroin because of the admission during the trial of evidence of previous sales. The Court held that testimony by the police officer to whom Boyd sold heroin concerning two prior sales the officer witnessed, two days before the sale for which Boyd was being tried, was inadmissible. The Court held that the prior sales were unrelated to the sale being tried and that the prejudicial effect of the evidence outweighed its probative value. *Id.* at 53, 189 S.E.2d at 360.

*Boyd* is to be contrasted with the case of *Cook v. Commonwealth*, 7 Va. App. 225, 372 S.E.2d 780 (1988). In *Cook*, the

defendant and his accomplice, within a time period of thirty minutes, entered three separate 7-Eleven stores in the same geographic area. Once inside, one accomplice would distract the clerk while the other concealed cigarettes. At trial, the defendant's motion to have the three offenses severed and tried separately was denied. "Each offense was a separate act or transaction taking place at a different location and at a different, although closely related, time." *Id*. at 228-29, 372 S.E.2d at 782. In affirming the conviction, this Court found that while these were similar transactions, they did not meet the requirement of "the same act or transaction." *Id*. However, the Court found that the prior offenses met the two other requirements of Rule 3A:6(b) as they constituted "connected" offenses and were part of the same "common scheme or plan." *Id*. at 229, 372 S.E.2d at 782. This Court held that the evidence of three offenses demonstrated that "they were not simply multiple offenses of a similar nature committed by the same people." *Id*.

Conversely, in this case, the cocaine sales are merely multiple offenses of a similar nature committed by the same person. In *Cook*, the offenses, in addition to being similar crimes committed by the same people in the same geographical area, were committed one immediately after the other, each within thirty minutes of the previous one. This timing, we held, manifested a single plan common to all three offenses. *Id*. In cases such as this, where the sales occurred as discreet events with a significant separation of time between each event, they do not meet the requirement of "the same act or transaction."

## II. Connected Transactions

■ The evidence shows that four sales of cocaine were made by Spence to Johnson, all of which took place at Whitesville. But the shortest interval between any two sales was eleven days and the longest interval was over two months. The Commonwealth makes much of the fact that Spence allegedly said to Johnson on one sale, "if you are not satisfied, you can come back and let me know," and "if you need anything else, I will be here," as proof of two or more acts or transactions that are connected. However, in this context we consider Spence's statements to be merely the assurances of a salesman that his wares were of good quality. Johnson never testified that he followed up on another sale because of Spence's statements. In fact, Johnson testified that he

"didn't want to continue to buy from the same person . . . because so many people were selling drugs." On March 1, 1989, and again on May 10, 1989, Johnson purchased drugs from Spence only after being unable to successfully connect with other individuals. As Spence suggests, Johnson sought out Spence. The transactions were initiated by Johnson. To meet the "connected" test, the crimes should be "so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety." *Kirkpatrick v. Commonwealth*, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970) (quoting *Walker v. Commonwealth*, 28 Va. (1 Leigh) 628, 631 (1829)).[1] The four sales did not arise out of "acts or transactions that are connected" as they occurred on different days and no evidence linked or connected one sale with the other. *See Godwin*, 6 Va. App. at 122, 367 S.E.2d at 522.

### III. Common Scheme or Plan

 Two separate sales of a controlled substance by the same individual on different occasions do not constitute a common scheme or plan. *Boyd v. Commonwealth*, 213 Va. at 53, 189 S.E.2d at 359-60. A common scheme or plan is present only if the "relationship among offenses . . . is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not obtainable by the commission of any of the individual offenses." *Godwin v. Commonwealth*, 6 Va. App. at 122, 367 S.E.2d at 522 (quoting 2 ABA *Standards for Criminal Justice* § 13-1.2, at 13.9 (2d ed. Supp. 1986)).

Nothing inherent in any of the four crimes herein charged would separate them from numerous offenses of possession and distribution of drugs that happen every day. There is no evidence

---

[1] By way of example, Judge Brockenbrough at 1 Leigh (28 Va.) 576-77 suggested: Thus, if a man be indicted for murder, and there be proof that the instrument of death was a pistol; proof, that that instrument belonged to another man, that it was taken from his house on the night preceding the murder, that the prisoner was there on that night, and that the pistol was seen in his possession on the day of the murder, just before the fatal act committed, is undoubtedly admissible, although it has the tendency to prove the prisoner guilty of larceny. Such circumstances constitute a part of the transaction; and whether they are perfectly innocent in themselves, or involve guilt, makes no difference, as to their bearing on the main question which they are adduced to prove.

of a plan tying these four drug sales together or showing that each offense was intended to assist in accomplishing a goal other than that achieved by each individual offense. The four offenses merely show that Spence has the propensity to commit the crime and this inference has been held to be error because it reverses his presumption of innocence. *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

In *Boyd*, the prosecution attempted to admit evidence of two prior heroin sales by the defendant in his trial for a subsequent heroin sale under the theory of "general scheme." The Supreme Court reversed the defendant's conviction in *Boyd*, as the prior sales were unrelated to the sale upon which the defendant was being tried. "[T]he evidence concerning the prior sales does not fall within an exception to the general rule. Its prejudicial effect outweighed its probative value. Therefore, we hold that the evidence of prior sales was not admissible." 213 Va. at 53, 189 S.E.2d at 360.

Therefore, the trial court erred in refusing to sever the charges for trial. In determining whether to sever the cases for trial, the trial court should make the determination based upon the situation as it appears before trial. From the record, we hold that no common scheme or plan or any connection appeared at that time. Therefore, it was error not to sever.

As the requirements of Rule 3A:6(b) were not met, we need not consider whether justice requires separate trials.

*Reversed.*

Barrow, J., and Coleman, J., concurred.